UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ANDREW GREGORY SPOTTED ELK,<br><br>Plaintiff,<br><br>vs.<br><br>TAYLOR YOST,<br><br>Defendant. | 4:17-CV-04097-LLP<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Andrew Gregory Spotted Elk, filed this pro se lawsuit pursuant to 42 U.S.C. § 1983. Defendant Taylor Yost filed a motion for summary judgment (Docket 14) arguing that summary judgment should be granted based on qualified immunity. Spotted Elk did not respond to the defendant's motion for summary judgment. Having considered the written record in this case and for the reasons set forth below, the defendant's motion for summary judgment is granted based upon qualified immunity.

## FACTUAL BACKGROUND

The local rules for this district require that the moving party on a motion for summary judgment submit a statement of the material facts as to which it contends there is no genuine issue to be tried. D.S.D. CIV. LR 56.1(A). The opposing party is required to respond to each numbered paragraph in the moving party's statement of material facts, and to identify any material facts as to which it contends there exists a genuine material issue to be tried. D.S.D. CIV. LR 56.1(B). All material facts set forth in the moving party's statement of material facts are deemed admitted if not controverted by the statement required to be served by the party opposing summary judgment.

D.S.D. CIV. LR 56.1(D); see also *On Target Sporting Goods, Inc. v. Attorney General of the United States*, 472 F.3d 572, 574 (8th Cir. 2007); see also *Northwest Bank & Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 724–25 (8th Cir. 2003) (holding it was not an abuse of discretion to deem that plaintiff had admitted all of defendants' statements of material facts as a sanction for noncompliance with local summary judgment rules). Such rules are properly intended "to prevent a district court from engaging in the proverbial search for a needle in the haystack." *Libel v. Adventure Lands of America, Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007) (discussing a similar Iowa Local Rule); see also *Huckins v. Hollingsworth*, 138 Fed. Appx. 860, 862 (8th Cir. 2005) (affirming district court's application of D.S.D. CIV. LR 56.1 "even though those rules prevented it from considering some facts improperly alleged by [Plaintiffs] that might have been relevant to the summary judgment motion").

"Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (citing *Faretta v. California*, 422 U.S. 806, 834-35 n. 46 (1975)). Additionally, a district court has no obligation to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Nor is the court "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Summary judgment could be granted without further analysis, because a party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

Yost filed a Statement of Undisputed Facts (Docket 20) along with supporting affidavits and exhibits. The undisputed facts are recited below:

1. Plaintiff, Andrew Gregory Spotted Elk, is an inmate currently incarcerated at the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota. Docket 1 at 1; Docket 5 at 21. Spotted Elk, on or about July 25, 2014, plead guilty to Aggravated Assault in violation of SDCL 22-18-1(2). *Spotted Elk v. Adams*, 2018 WL 1462229 at *2 (D.S.D.) He was thereafter sentenced, on or about December 10, 2014, to serve fifteen (15) years in the SDSP. *Id.*

2. Spotted Elk initiated the present lawsuit on or about July 26, 2017. Docket 1. As noted by the Court, in its Order dated August 30, 2017, Spotted Elk "raises claims of excessive force by an officer and hate crime." Docket 5 at 22; Docket 1 at 4-5.

3. The Court, as indicated in the above Order, undertook to screen Spotted Elk's Complaint pursuant to 28 U.S.C. § 1915A. Docket 5 at 21. As for Spotted Elk's claim of an alleged "hate crime," the Court found that he "has not identified a legal basis for a hate crime cause of action other than the Eighth Amendment." Docket 5 at 25.

4. The Court, citing to "*Frison v. Zebro*, 339 F.3d 994, 999 (8th Cir. 2003), stated that "it is well settled that criminal statutes will rarely survive § 1983 analysis." Docket 5 at 25. Spotted Elk's claim for an alleged hate crime was therefore dismissed pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(1) for failure to state a claim on which relief may be granted. *Id.* at 26.

5. It was said, however, that "Spotted Elk has pleaded sufficient facts to show that Taylor Yost may have applied force that was maliciously meant to cause harm." *Id.* at 25. Spotted Elk's excessive force claim was thus found to survive screening under 28 U.S.C. § 1915A.

3

6. Defendant Yost's Statement of Undisputed Material Facts will therefore be limited or confined to the allegations by Spotted Elk that Yost "applied force that was maliciously meant to cause harm." Docket 5 at 25.

7. There has been no showing, however, by Spotted Elk that Defendant Yost, or any of the other Officers for that matter, in responding to the incident taking place at the South Dakota State Penitentiary (SDSP) on August 6, 2016, resorted to excessive physical force in violation of the 8th Amendment. Docket 17 ¶ 5; Docket 18 ¶ 6; Docket 19 ¶ 5; Exhibits 1-9.

8. The record will reflect that Spotted Elk's "own conduct made it necessary for prison officials to forcefully restrain him." Docket 17 ¶ 6; Docket 18 ¶ 12; Docket 19 ¶ 11; Exhibits 1-5. Spotted Elk, rather than simply comply with the directives that were given, elected to actively resist the Officers' efforts to subdue him once they entered his holding cell.

9. The record reflects that, at approximately 1:00 p.m. on August 6, 2016, Spotted Elk was observed having "kicked the holding cell door." Docket 17 ¶ 9; Docket 18 ¶ 8; Exhibit 1. He was also shouting various obscenities. Docket 17 ¶ 9; Docket 18 ¶ 8.

10. The record reflects that Spotted Elk had been placed in a holding cell after he was alleged, in a Disciplinary Report dated August 6, 2016, to have committed Prohibited Act M-5.[1] Exhibit 2. Said rule prohibits an inmate from engaging in "Unsolicited contact with, or in reference to, any non-inmate notes, letters, messages, suggestive remarks or gestures, inappropriate touching or seeking out personal information." *Id.*

---

[1] Yost cites the affidavit of Hannon in his statement of undisputed fact. Yost failed to file any such affidavit. Thus, the court does not review nor rely upon Yost's citation to the Hannon affidavit.

4

11. The above Disciplinary Report was based on an Informational Report "from CBM Cheryl that Inmate Spotted Elk had touched CBM Cheryl inappropriately." Exhibit 2. As indicated in said Informational Report, Spotted Elk "grabbed my (CBM Cheryl) bottom four times." Exhibit 3.

12. According to said Report, "it was a grab, pinch as I (CBM Cheryl) would walk thru an area Inmate Spotted Elk is in." Since Spotted Elk "is not allowed to touch staff," he was "fired from the kitchen." Exhibit 3.

13. Officers Yost and Boysen, having observed his behavior inside the holding cell, directed Spotted Elk to stop but he elected to ignore those directives. Docket 17 ¶ 14; Docket 18 ¶ 12. Spotted Elk, therefore, left the officers no alternative but to enter the holding cell in an attempt to restrain him. Docket 17 ¶ 14; Docket 18 ¶ 16.

14. His behavior was clearly in violation of the numerous Institutional Rules in place at the SDSP which strictly prohibit an inmate from engaging in conduct that "disrupts or interferes with the security or good order of the prison." Docket 17 ¶ 15; Docket 18 ¶ 5; Docket 19 ¶ 15; Exhibits 1, 4-5.

15. Any yelling or screaming by an inmate, along with banging on his cell door, is deemed or considered to be a "disturbance" since it can easily disturb/annoy other inmates. Docket 17 ¶ 16; Docket 18 ¶ 18; Docket 19 ¶ 16. It can also often incite those other inmates to join in similar behavior, thereby further adding to the commotion and disturbance. Docket 17 ¶ 16; Docket 18 ¶ 18; Docket 19 ¶ 16.

16. Moreover, the noise level generated as a result of the continued yelling and banging on cell doors creates an obvious security risk since it can make it difficult for Officers to hear other

inmates who may be in need of some type of assistance. Docket 17 ¶ 17; Docket 18 ¶ 19; Docket 19 ¶ 17.

17. In addition to disrupting the "good order and security" of the prison, an inmate engaging in such behavior can also present a risk of harm to himself. In the instant case, the Officers were concerned that Spotted Elk, in continuing to kick the door of his holding cell, might possibly injure or break his foot. Docket 17 ¶¶ 18-19; Docket 18 ¶¶ 20-21; Docket 19 ¶¶ 18-19.

18. If not restrained and allowed instead to continue to engage in such self-injurious behavior, it was believed that Spotted Elk could injure his hand/foot by kicking or punching his cell door. Docket 17 ¶ 19; Docket 18 ¶ 21; Docket 19 ¶ 19. The decision was therefore made to also restrain Spotted Elk for his own safety.

19. Upon entering the holding cell, the Officers were "attempting to move Inmate Spotted Elk . . . from the A-floor holding cell to Section 6 of A-floor." Docket 17 ¶ 20; Exhibits 4-5.

20. Spotted Elk, however, "became combative." A review of the record reflects that "Immediately after opening the holding cell, the inmate attempted to kick at SCO Boysen." Docket 17 ¶ 21; Docket 18 ¶ 9; Docket 19 ¶ 7; Exhibits 4-5.

21. At that time, the Officers "went hands on to prevent any further attempts of staff assault." Yost "took control of the inmate's torso and delivered a knee strike directed toward his shoulder." Docket 17 ¶ 21; Docket 18 ¶ 10; Docket 19 ¶¶ 8-9; Exhibits 4-5.

22. Officer Yost also "pushed him [Spotted Elk] down to face the bench to prevent him from spitting." SCO Boysen, meanwhile, "secured his [Spotted Elk's] legs with restraints." Docket 17 ¶ 22; Docket 18 ¶ 11; Docket 19 ¶ 10; Exhibits 1, 4-5.

23. Spotted Elk was later charged with having committed Prohibited Act M-6 which prohibits any inmate from engaging in "Conduct that disrupts or interferes with the security or good order of the institution or interferes with a staff member during performance of his/her duties which clearly poses a threat to the safety of staff or other inmates." Docket 17 ¶ 24; Docket 18 ¶ 17; Docket 19 ¶ 20; Exhibit 4.

24. Spotted Elk was then later "moved to Section 6" of the A-floor." It was at that time that he "threatened to rape [Yost's] sister or mother." Docket 17 ¶ 25; Docket 19 ¶ 21; Exhibit 5.

25. Based on said threats, Spotted Elk was charged with violating Prohibited Act M-4. That Rule prohibits an inmate from "Threatening any non-inmate with bodily harm or with any offense against his/her person, his/her family or his/her property." Docket 17 ¶ 26; Docket 19 ¶ 22; Exhibit 5.

26. As noted by Spotted Elk, his "injuries" were later "photographed and documented by the Dept. of Health." Docket 1 at 4. Copies of the photographs in question have been provided to the Court in support of Defendant's Motion for Summary Judgment. Exhibits 7-9.

27. A review of his medical records reflects that Spotted Elk was seen by Health Services at the SDSP on August 6, 2016 and "assessed following a use of force." Docket 16 ¶ 5; Exhibit 6.

28. At that time, he was said to have a "bruise/bump to the left cheekbone area. Slight swelling of the left cheekbone area." Docket 16 ¶ 5; Exhibit 6. Although Spotted Elk also had a "wound to the right shin," the record reflects that there was "no active bleeding. No swelling. No drainage noted." Docket 16 ¶ 6; Exhibit 6.

29. Health Services informed Spotted Elk that they "will continue to monitor." Docket 16 ¶ 8; Exhibit 6. He was therefore, for the next several days, continually observed by Health Services while in the Segregation Unit.

30. As reflected in Spotted Elk's medical records, there were "No Concerns." Docket 16 ¶ 8; Exhibits 10-13. At no time did Spotted Elk indicate to Health Services that he was in need in further medical attention as a result of the incident taking place on August 6, 2018. Docket 16 ¶ 9.

## Legal Standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quotation omitted).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing 9A Charles Alan Wright et al., *Federal Practice and Procedure*, § 2725, at 93–95 (3d ed. 1983)). "[T]he mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48.

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980). "When dealing with summary judgment procedures the technical rigor is inappropriate where . . . uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985).

## DISCUSSION

### I. Official Capacity

Spotted Elk sued Yost in his official capacity. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66. The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* Because Spotted Elk has

9

sued Yost in his official capacity, Spotted Elk has asserted a claim for money damages against the state of South Dakota. The state of South Dakota has not waived its sovereign immunity. Thus, to the extent Spotted Elk seeks to hold Yost liable in his official capacity for money damages, the court would find that Yost is protected by sovereign immunity and would be entitled to judgment on this issue as a matter of law.

## II. Individual Capacity

Yost moves for summary judgment on Spotted Elk's excessive force claim. Under the Eighth Amendment, prisoners are protected "from the unnecessary and wanton infliction of pain by correctional officers[.]" *Treats v. Morgan*, 308 F.3d 868, 870 (8th Cir. 2002) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). This is true, "regardless of whether an inmate suffers serious injury as a result." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Correctional officers may "use force reasonably 'in a good-faith effort to maintain or restore discipline,' but force [may] not to be used 'maliciously and sadistically to cause harm.' " *Id.* (quoting *Hudson*, 503 U.S. at 7).

"In an Eighth Amendment excessive force case, 'the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014) (quoting *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013)). In deciding an Eighth Amendment claim, the court considers "whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury." *Treats*, 308 F.3d at 870 (citing *Hudson*, 503 U.S. at 7). Because "the use of force is sometimes required in prison settings," *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008), courts frequently uphold officers' ability to use physical force to restrain noncompliant inmates.

*See, e.g., Johnson v. Hamilton*, 452 F.3d 967, 972 (8th Cir. 2006); *Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (use of a stun gun to subdue a combative prisoner, even when four guards were present, was not excessive force).

The material facts are not disputed. Spotted Elk refused to comply with orders to stop kicking the holding cell door. Docket 17 ¶ 14; Docket 18 ¶ 12. When officers entered the holding cell to move Spotted Elk, Spotted Elk "became combative" and "attempted to kick at SCO Boysen." Docket 17 ¶ 19; Docket 18 ¶ 9; Docket 19 ¶ 7; Exhibits 4-5. The use of force by Yost was applied for the purpose of gaining control of a recalcitrant inmate and prevent attempts to assault staff. Docket 17 ¶ 21; Docket 18 ¶ 9; Docket 19 ¶ 7; Exhibits 4-5.

Spotted Elk's own conduct made it necessary for prison officials to forcefully restrain him. As a matter of law, there is nothing inhumane or wanton about enforcing reasonable prison regulations. *Stenzel v. Ellis*, 916 F.2d 423, 428 (8th Cir. 1990). As was aptly stated by the Seventh Circuit:

> Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. . . . Inmates are and must be required to obey orders. When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.

*Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009); *see also Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014) (pepper-spraying an inmate who disobeyed orders and engaged in aggressive acts of defiance was not a case where "a complete absence of a penological purpose" raised "the reasonable inference that the officers acted maliciously in an effort to cause harm").

There is also no material question of fact as to whether the force was excessive when Yost kneed Spotted Elk. Spotted Elk suffered only minor injuries. *See* Docket 16 ¶¶ 5-8; Exhibit 6.

Spotted Elk fails to demonstrate any sadistic or malicious action on the part of Yost. As such, Yost is entitled to qualified immunity on Spotted Elk's claim of excessive force. Accordingly,

IT IS ORDERED that Yost's motion for summary judgment (Docket ) is granted.

DATED July 16, 2019.

BY THE COURT:

*Lawrence Piersol*
LAWRENCE L. PIERSOL
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK
BY: *Matthew Thelen*
(SEAL)    DEPUTY